IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PEGGY RUSS and TAFFY GAUSE | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| SID CAUSEY, in his individual and official | : | |
| capacity as Sheriff of New Hanover County; | : | |
| ED McMAHON, in his individual and | : | **COMPLAINT** |
| official capacity as Chief Deputy Sheriff | : | (Jury Trial Demanded) |
| of New Hanover County; LACHLAN | : | |
| MacNEISH, in his individual and official | : | |
| capacity as Deputy Sheriff of New Hanover | : | |
| County; DOUG PRICE in his individual | : | |
| and official capacity as Deputy Sheriff of | : | |
| of New Hanover County; ERIC BROWN, | : | |
| in his individual and official capacity as | : | |
| Deputy Sheriff of New Hanover County, | : | |
| and, VERNON JORDAN, in his individual | : | |
| and official capacity as Deputy Sheriff of | : | |
| New Hanover County, and OHIO | : | |
| CASUALTY INSURANCE COMPANY | : | |
| | : | |
| Defendants. | : | |
| | : | |

Plaintiffs, complaining of the Defendants, allege and say as follows:

**NATURE OF THE CASE**

1. This is a civil action seeking compensatory and punitive damages, pursuant to 42 U.S.C. §1983 for the deprivation of the Plaintiffs' civil rights by the Defendants, and specifically, Plaintiffs Constitutional Rights to Privacy. This action also asserts common law claims of Assault, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, Invasion of Privacy, and Negligence.

## PARTIES

2. Plaintiff, Peggy Russ (herein "Russ") is a citizen and resident of New Hanover County, North Carolina.

3. Plaintiff, Taffy Gause (herein "Gause") is a citizen and resident of New Hanover County, North Carolina.

4. Upon information and belief, Defendant, Sid Causey (herein "Causey") is a citizen and resident of New Hanover County, North Carolina suffering no legal disability. At all times mentioned herein, Defendant Causey was the Sheriff of New Hanover County, authorized to act on behalf of the New Hanover County Sheriff's Department, and responsible for the hiring, training and supervision of the deputy sheriffs of New Hanover County Sheriff's Department, and is hereby sued in his individual and official capacity as Sheriff of New Hanover County, and has waived governmental immunity, as well as all other Defendants by the purchase of liability insurance or official bond.

5. Upon information and belief, Defendant Ed McMahon (herein "McMahon") is a citizen and resident of New Hanover County, North Carolina suffering no legal disability. At all times mentioned herein, Defendant McMahon was Chief Deputy of New Hanover County, authorized to act on behalf of the New Hanover County Sheriff's Department, and responsible for the hiring, training and supervision of the deputy sheriffs of New Hanover County Sheriff's Department, and is hereby sued in his individual and official capacity as Chief Deputy of New Hanover County.

6. Upon information and belief, Defendant Lachlan MacNeish (herein "MacNeish") is a citizen and resident of New Hanover County, North Carolina suffering no legal disability. At all times mentioned herein, Defendant MacNeish was a Lieutenant of the Emergency

Response Team of New Hanover County Sheriff's Department authorized to act on behalf of the New Hanover County Sheriff's Department and responsible for the supervision of Deputy Sheriffs Eric Brown and Vernon Jordan and is hereby sued in his individual and official capacity as a Lieutenant of the New Hanover County Sheriff's Department.

7.     Upon information and belief, Defendant Doug Price (herein "Price") is a citizen and resident of New Hanover County, North Carolina suffering no legal disability. At all times mentioned herein, Defendant Price was a Lieutenant in the Patrol Division of the New Hanover County Sheriff's Department authorized to act on behalf of the New Hanover County Sheriff's Department and responsible for the supervision of Deputy Sheriffs Eric Brown and Vernon Jordan and is hereby sued in his individual and official capacity as a Lieutenant of the New Hanover County Sheriff's Department.

8.     Upon information and belief, Defendant Eric Brown (herein "Brown") is a citizen and resident of New Hanover County, North Carolina suffering no legal disability. At all times mentioned herein, Defendant Brown was a Deputy Sheriff of the New Hanover County Sheriff's Department authorized to act on behalf of the New Hanover County Sheriff's Department and is hereby sued in his individual and official capacity as Deputy Sheriff of the New Hanover County Sheriff's Department.

9.     Upon information and belief, Defendant Vernon Jordan (herein "Jordan") is a citizen and resident of New Hanover County, North Carolina suffering no legal disability. At all times mentioned herein, Defendant Jordan was a Deputy Sheriff of the New Hanover County Sheriff's Department authorized to act on behalf of the New Hanover County Sheriff's Department and is hereby sued in his individual and official capacity as Deputy Sheriff of the New Hanover County Sheriff's Department.

10. Upon information and belief, Defendant Ohio Casualty Insurance Company is a corporation with a principal place of business located in North Carolina, and is the surety for Sheriff Sid Causey's sheriff's bond.

## JURISDICTION & VENUE

11. Jurisdiction is founded upon 28 U.S.C. §1331 and §1343; 42 U.S.C. §1983; the United States Constitution and Amendments thereto. Plaintiffs further invoke the pendent jurisdiction of this Court to hear and decide claims arising under state law.

12. Venue is founded upon 28 U.S.C. § 1391, and is proper in the Eastern District of North Carolina since the injuries giving rise to Plaintiffs' claim occurred in New Hanover County, North Carolina, which is located within the jurisdictional grasp of the District Court for the Eastern District of North Carolina.

## FACTUAL ALLEGATIONS

13. On November 15, 2008, family and friends gathered at Andrew's Mortuary located in Wilmington, North Carolina, to celebrate the life and death of Gladwyn Taft Russ, Jr. who had recently passed away.

14. A funeral is about celebrating the life and departure of a loved one and it is one of the most solemn and sacred experiences of human existence. Of equal importance at a funeral is the opportunity for family and friends to offer sympathy and support to the immediate family.

15. Gladwyn Taft Russ, Jr. was the husband of Plaintiff Russ and the father of Plaintiff Gause.

16. The funeral service began in the afternoon of the 15th and as most funeral services, was an emotional time for the Plaintiffs who were experiencing many ranges of emotion, including sadness, remembrance, and a rejoicing that God had received their husband/father.

17. Upon information and belief, Defendants McNeish, Price, Brown, and Jordan attended the funeral service dressed in coats and ties, providing the appearance of being family or friends of Gladwyn Taft Russ, Jr. while in fact they were acting as undercover agents of the New Hanover County Sheriff's Department.

18. Upon information and belief, Defendant McMahon directed the Defendants McNeish, Price, Brown, and Jordan to attend the funeral service.

19. The funeral service concluded and the funeral procession exited the chapel, the casket of Mr. Gladwyn Taft Russ, Jr. being carried by six pallbearers.

20. Upon information and belief, as the casket of Mr. Gladwyn Taft Russ, Jr. was being brought to the hearse, where it would be transported to Greenlawn Cemetery for the burial service, Defendants McNeish, Price, Brown, and Jordan, in suits, ties, and sunglasses appeared out of nowhere and attempted to assault and arrest one of the pallbearers, Gladwyn Taft Russ III, the son of the deceased.

21. Upon information and belief, two of the Defendants, McNeish, Price, Brown, and/or Jordan, while Gladwyn Taft Russ III was carrying the casket, grabbed him by the arm, kneed him in the back of leg, and eventually used a taser against him while he was attempting to load the casket into the hearse.

22. Upon information and belief, were it not for the efforts of the other pallbearers the casket would have fallen to the ground.

23. Family and friends attending the service approached the hearse not knowing what the commotion was, at which point one of the Defendants McNeish, Price, Brown, and Jordan, brandished a gun and pointed it back and forth amongst the crowd, including the Plaintiffs,

congregating around the hearse, shouting "Get back, get back" and "If you don't shut up, I'm going to shoot you."

24. During the melee caused by the Defendants, one of the Defendant deputies' handguns fell out of its holster and onto the asphalt.

25. Plaintiffs witnessed this aforementioned sequence of frightful and horrific events.

26. Upon information and belief, at no time prior to the Defendants assault on Gladwyn Taft Russ III, nor prior to the pointing of the gun and tasers at the Plaintiffs and other attendees of the funeral service did any of the Defendants notify Mr. Russ III, the Plaintiffs, or any of the individuals attending the service that they were police officers.

27. Upon information and belief, there was an outstanding warrant for the arrest of Gladwyn Taft Russ III, however both Gladwyn Taft Russ III and Plaintiff Russ had communicated with the New Hanover County Sheriff's Department, and specifically Defendant McMahon, concerning said warrant, and it was agreed between McMahon and Plaintiff Russ that Gladwyn Taft Russ III would turn himself in after his father had been properly buried, and that New Hanover County Sheriff's Department would not take any action to arrest Mr. Russ III until after he had buried his father.

28. Upon information and belief, despite the agreement with Gladwyn Taft Russ III and the Plaintiff that Mr. Russ III would turn himself in after his father had been buried, Defendant McMahon authorized Defendants McNeish, Price, Brown, and Jordan to arrest Mr. Russ III during the funeral service.

29. Upon information and belief, prior to the funeral service, all of the Defendants created a plan whereby they would attempt to arrest Gladwyn Taft Russ III during the funeral service, the plan including the following:

    i. Dressing up in suits and ties, as is appropriate at funerals, to provide the appearance of being undercover;

    ii. Attempting to surprise Gladwyn Taft Russ III by arresting him while he was carrying his father's casket;

    iii. Refusing to identify themselves during the course of the arrest.

30. Upon information and belief, while Defendants Brown and Jordan were the arresting officers of Gladwyn Taft Russ III, Defendants McNeish and Price were present at the scene and allowed and condoned the actions of Defendants Brown and Jordan, while Defendants McMahon and Causey authorized the arrest at the funeral.

31. Upon information and belief, Defendants Causey and McMahon knew of or reasonably should have known of the plan of the other Defendants to arrest Mr. Russ III during the funeral service and taken action to prevent the execution of said plan.

32. The Defendants then arrested Gladwyn Taft Russ III.

33. A military burial was supposed to take place once the casket had arrived at the cemetery with the Honor Guard providing Plaintiff Russ an American flag and the playing of Taps.

34. While this did occur, many friends and family members who had attended the service did not attend the burial due to the actions of the Defendants.

35. Upon information and belief, as the hearse was attempting to exit from the church to drive to the cemetery, Defendants McNeish, Price, Brown, and/or Jordan recklessly cut off the hearse in their patrol cars with sirens sounding and lights blazing, manifesting a complete disregard for the wellbeing of the Plaintiffs and anyone else that attended the funeral service, and a lack of respect for the deceased.

8

36. In our society, law enforcement is designed to symbolize safety, not oppression and the Defendants abused their power. Their actions were irresponsible, inexcusable, and irreprehensible, and in an effort to act like clandestine CIA agents they completely disregarded the Plaintiffs and their wellbeing, as well as everyone else that attended the funeral service.

37. At all times pertinent hereto, Defendants were acting under color of law and under color of authority as deputies with the New Hanover County Sheriff's Department.

38. Upon information and belief, Defendants admit that they made a mistake in acting as they did.

39. Upon information and belief, one of the Defendants had been previously disciplined by the New Hanover County Sheriff's Department for their inexcusable conduct prior to this instance.

40. All of the Defendants are official "policymakers" for the Sheriff and the Sheriff's Department, and their edicts and/or acts may fairly be said to represent the official policies of the Sheriff and the Sheriff's Department.

41. Upon information and belief, Defendants McNeish and Price are official policymakers for New Hanover County Sheriff Department's Emergency Response Team.

**FIRST CLAIM FOR RELIEF**
**(Violation of U.S. and N.C. Constitutional Right to Privacy - 42 U.S.C. §1983)**

42. Plaintiffs incorporate by reference the allegations contained in paragraphs 1- 41 of the Complaint as if fully set forth herein.

43. Plaintiffs have a right to be free from unjustifiable intrusion upon their privacy as guaranteed by the United States Constitution and Article 1, Section 19 of the North Carolina Constitution and a right to retain solitude in their private affairs pursuant to 42 USC §1983.

44. The actions of the Defendants were done under color of law and deprived the Plaintiff of their rights, privileges and immunities secured by the U.S. Constitution.

45. The Defendants were official policy makers with respect to the actions delineated above that occurred at the funeral, and their edicts and/or acts may fairly be said to represent the official policies of the Sheriff and New Hanover County Sheriff's Department.

46. Upon information and belief, Defendant Causey failed to properly hire, supervise, control, train, or direct his employee(s) resulting in violation of Plaintiffs constitutional rights.

47. Upon information and belief, Defendant Causey failed to properly supervise, control, train, or direct the other Defendants, resulting in violation of Plaintiffs' constitutional rights.

48. Upon information and belief, Defendant Causey knew or reasonably should have known of the other Defendants purported plan.

49. Upon information and belief, Defendant Causey failed to implement policies and procedures to eliminate the high risk of serious injury to Plaintiffs.

50. Said actions and/or omissions of Defendants delineated above resulted in violations of Plaintiffs' constitutional rights.

51. As a proximate result of the conduct of the Defendants in violating the Plaintiffs' right to privacy, the Plaintiffs have suffered, upon information and belief, embarrassment, emotional distress, humiliation, and injury to themselves and their good name and reputation, entitling the Plaintiff to compensatory damages from the Defendants.

### SECOND CLAIM FOR RELIEF
**(Assault)**

52. Plaintiffs incorporates the allegations of paragraphs 1-51 as if set forth fully herein.

53. Upon information and belief Defendants Brown and Jordan by intentional acts or displays of force and violence, threatened the Plaintiffs with imminent bodily injury, including waiving guns and tasers at the Plaintiffs.

54. Such acts or displays caused the Plaintiffs to have a reasonable apprehension that harmful and offensive contact with their person was imminent.

55. By reason of the assaults by Defendants Brown and Jordan, the Plaintiffs have been damaged, and are entitled to recover damages from the Defendants Brown and Jordan, jointly and severally, in an amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

56. Alternatively, should it be determined that Defendants Brown and Jordan were not the deputies that pointed their guns at the Plaintiffs, and instead Defendants McNeish and Price were the culpable deputies, Plaintiffs have been damaged by the assaults of these officers and are entitled to recover from Defendants McNeish and Price, jointly and severally, in an amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

### THIRD CLAIM FOR RELIEF
**(Negligent Infliction of Emotional Distress)**

57. Plaintiffs incorporate by reference the allegations contained in paragraphs 1- 56 of the Complaint as if fully set forth herein.

58. Defendants owed a duty to Plaintiffs to exercise reasonable care. Defendants' negligent acts, as alleged herein, constitute a breach of that duty.

59. The Defendants were negligent in that they failed to follow a duty of conduct imposed by law, and failed to act as a reasonable and prudent person or deputy would act under the same or similar circumstances.

60. Plaintiffs suffered from severe emotional distress as a proximate result of the Defendants negligence and are entitled to recover from the Defendants, jointly and severally, a sum in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

### FOURTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

61. Plaintiffs incorporate by reference the allegations contained in paragraphs 1- 60 of the Complaint as if fully set forth herein.

62. As set forth above, Defendants engaged in extreme and outrageous conduct which exceeded all bounds usually tolerated by decent society.

63. Defendants' conduct was intended to cause, or was recklessly indifferent to the likelihood it would cause severe emotional distress to the Plaintiffs.

64. The Defendants' conduct did cause severe emotional distress to the Plaintiffs.

65. By reason of the Intentional Infliction of Emotional Distress by Defendants, the Plaintiffs have been damaged, and are entitled to recover damages from the Defendants, in an amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

### FIFTH CLAIM FOR RELIEF
### (Invasion of Privacy)

66. Plaintiffs incorporate by reference the allegations contained in paragraphs 1- 65 of the Complaint as if fully set forth herein.

67. Defendants intruded upon the privacy of the Plaintiffs by invading the private affairs or personal concerns of the Plaintiffs at a time when Plaintiffs had a reasonable expectation of privacy to the burial of their husband/father.

68. The Defendants intrusion was intentional and a reasonable person would be highly offended by the intrusion under the same or similar circumstances.

69. By reason of the Invasion of Privacy by Defendants, the Plaintiffs have been damaged, and are entitled to recover damages from the Defendants, jointly and severally, in an amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

### SIXTH CLAIM FOR RELIEF
### (In the alternative - Negligence)

70. Plaintiffs incorporate the allegations of paragraphs 1-69 as if set forth fully herein.

71. At all times herein, Defendants had a duty of conduct imposed by law to not assault and otherwise harass the Plaintiffs.

72. Defendants repeatedly breached such duty to Plaintiffs and were otherwise negligent, as detailed above.

73. As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered emotional distress, and other such damages to be proven at the trial of this matter.

74. Such emotional and physical injuries are anticipated to continue in the future.

75. As a proximate result of the foregoing, Plaintiffs have suffered damages and are entitled to recover an amount, jointly and severally, in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00) from Defendants.

### SEVENTH CLAIM FOR RELIEF
### (N.C.G.S. § 58-76-5)

76. Plaintiffs incorporates paragraphs 1 - 75 as if set forth fully herein.

77. Plaintiffs have been injured by the neglect, misconduct and/or misbehavior of the Defendants acting by virtue or under color of their office.

78. As a proximate result of the foregoing, Plaintiffs have suffered damages and are entitled to recover an amount, jointly and severally, in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00) from Defendants and their surety.

## EIGHTH CLAIM FOR RELIEF
### (Punitive Damages)

79. Plaintiffs incorporates paragraphs 1 - 78 as if set forth fully herein.

80. The acts of McMahon, McNeish, Price, Brown and Jordan, specifically the furtherance of the plan which the aforementioned Defendants created, was done with actual malice, and/or was done in gross, willful, wanton, and reckless violation of the laws of North Carolina and the United States, entitling the Plaintiff to punitive damages against those Defendants in an amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).

**WHEREFORE**, Plaintiffs prays for judgment against the Defendants as follows:

1. Award the Plaintiffs compensatory damages against the Defendants, jointly and severally, in an amount in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00), plus interest as allowed by law;

2. Award the Plaintiffs punitive damages against the Defendants McMahon, McNeish, Price, Brown and Jordan, jointly and severally, in an amount in excess of SEVENTY FIVE THOUSAND ($75,000.00);

3. Award the Plaintiffs their reasonably attorney's fees and costs herein;

4. Allow a trial by jury; and

5. Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted this the 9th day of February, 2009.

                                  **SHIPMAN & WRIGHT, L.L.P.**
Attorneys for Plaintiffs


/s/Matthew W. Buckmiller
**GARY K. SHIPMAN**
N.C. State Bar No.: 9464
**MATTHEW W. BUCKMILLER**
N.C. State Bar No.: 35194
575 Military Cutoff, Suite 106
Wilmington, NC 28405
(910) 762-1990